The **HOME INSURANCE COMPANY**, a corporation, Plaintiff,

v.

**EXCHANGE LEMON PRODUCTS COM-PANY**, a corporation, Defendant.

No. 13878.

United States District Court, S. D. California, Central Division.

Dec. 15, 1954.

Thomas P. Menzies, Los Angeles, Cal., for plaintiff.

Clayson, Stark & Rothrock, Corona, Cal., for defendant.

BYRNE, District Judge.

On April 23, 1946, plaintiff The Home Insurance Company issued to the defendant Exchange Lemon Products Company a transportation insurance policy whereby, subject to the terms and conditions of the policy, plaintiff insured defendant against loss or damage to its products. On various dates between May 3, 1950, and August 22, 1950, defendant shipped certain citrus by-products from Corona, California, consigned to the defendant for "storage in transit" at Crooks Terminal Warehouse, Kansas City, Missouri. For a period of approximately one year these products were maintained in said warehouse for the account of defendant and were still awaiting further shipping orders when, on July 13, 1951, and while the policy was in full force and effect, they were totally destroyed by a flood. Defendant filed a timely proof of loss with the plaintiff and demanded $161,-991.63 as the value of the products destroyed. Plaintiff refused payment and now seeks from this court a declaration of rights, duties and liabilities of the parties under the policy. Defendant has filed a counterclaim and prays for a judgment in the amount of its claimed loss with interest and costs.

It is plaintiff's contention that at the time of their destruction, defendant's products were not insured under the policy. The basis for this contention is the provision of the policy reading: "This policy covers * * * the insured property * * * only while in due course of transit and not if such property is in storage."

At the pretrial hearing the parties stipulated to the facts and agreed that there were no issues of fact for trial unless " * * * the court rules on the issue of law that the defendant is entitled to introduce testimony to the effect that at the time the insurance policy involved in this action was issued, there was in existence any trade terminology or technical meaning in the transportation trade for the term 'in due course of transit'."

When the case was called for trial the plaintiff objected to defendant's proffered evidence of trade usage in the transportation trade, and the court sustained the objection. Thus, there were no issues of fact for trial, and in accordance with the pretrial agreement of the parties no jury was impaneled.

■ The primary question of law is the interpretation of the contract of insurance. This is a diversity case and California law is applicable. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The parties concede that the products were in storage at the time of their destruction and the policy specifically provides that it does not cover when the property is in storage. To avoid the effect of this specific provision of the contract, defendant seeks to introduce evidence of trade usage in a trade in which *neither of the parties is engaged,* for the purpose of establishing that by the use of the term, "in due course of transit", the parties intended that the policy should cover when the property was in a certain kind of storage, even though the contract expressly provides that it shall not cover if such property is in storage.

■ The law is clear that evidence of trade usage may be admitted to define a word or term used in a contract. Myers v. Tibbals, 72 Cal. 278, 13 P. 695; Higgins v. California Petroleum & Asphalt Co., 120 Cal. 629, 52 P. 1080; Cal. Code Civ.Proc. §§ 1861 and 1870, subd. 12; Cal.Civ.Code § 1644. And there is no requirement that the word or term sought to be defined be obscure or ambiguous. Ermolieff v. R. K. O. Radio Pictures, Inc., 19 Cal.2d 543, 122 P.2d 3, 6; Body-Steffner Co. v. Flotill Products, 63 Cal.App.2d 555, 147 P.2d 84; 55 Am.Jur. Sec. 37, page 299; Hurst v. W. J. Lake & Co., 141 Or. 306, 16 P.2d 627, 89 A.L.R. 1228.

■ Trade usage in a particular trade is admissible where both parties are en-

gaged in that trade. In such a case the parties to the contract are deemed to have used the disputed term according to the meaning or sense it bears in the trade. As stated in Restatement of Contracts, Section 248, page 532: "Where both parties to a transaction are engaged in the same occupation, or belong to the same group of persons, the usages of that occupation or group are operative, unless one of the parties knows or has reason to know that the other party has an inconsistent intention." That the instant action is not such a case is clear, for plaintiff is engaged in the insurance business and defendant in the business of marketing citrus products.

The question of admissibility of evidence of trade usage may arise where one of the parties is engaged in the trade whose usage is sought to be admitted and the other is not. The rule in such a case was thus stated in Latta v. Da Roza, 100 Cal.App. 606, 280 P. 711, 712, 281 P. 655: "To bind one who is not engaged in the trade or occupation which employs the usage relied upon, proof of his actual knowledge of the usage is necessary, unless it is so commonly accepted that the public is presumed to recognize its existence." Lynch v. Bekins Van & Storage Co., 31 Cal.App. 68, 159 P. 822, and Wigmore on Evidence, 3rd Ed., Vol. IX, Sec. 2464, p. 209, are in accord. In the instant case, defendant alleged a usage for the term, "in due course of transit", in the transportation trade, and plaintiff's knowledge thereof. As already noted, neither of the parties is engaged in that trade. However, defendant erroneously contends that as a shipper it is engaged in the transportation trade. The mere fact that one arranges for the transportation of property does not mean that such person is engaged in the transportation trade any more than everyone who has a bank account could be deemed to be engaged in the banking trade within the meaning of the rule.

In its counterclaim, the defendant alleges, "The term 'in due course of transit' has a trade usage in the transportation trade, to-wit: shipped in compliance with the transit privilege provisions of the railway tariffs authorized by the Interstate Commerce Commission, which includes what is known as 'transit storage' or 'stoppage in transit' as distinguished from local or terminal storage." Defendant also avers that the goods destroyed on July 13, 1951, were stored under the transit privilege provisions of said railway tariffs. Further, it is alleged that the policy was negotiated between James S. Jennings, plaintiff's agent, and Thomas C. Borden, defendant's traffic manager, and that both persons knew of the trade meaning of the term, "due course of transit", and discussed the same in connection with negotiations for the policy.

Assuming the truth of these allegations, they establish another fundamental reason why evidence of trade usage is not admissible in this case. The defendant alleges that the goods were placed in storage under the transit privilege provisions of the railway tariffs authorized by the Interstate Commerce Commission, and that the privilege provisions included the right to storage in transit.[1] The railway tariffs and the transit privilege provisions authorizing storage in transit relate to the published schedule of *rates and charges* and are a part of the contract between *the freight carrier and the shipper,* but have nothing to do with contracts of insurance between the shipper and an insurer. The privileges referred to permit the shipper to remove stocks from the channels of transportation, maintain such stocks in storage for a period and therafter return them to the channels of transportation without losing the benefit of long-haul rates. If, as alleged in the counterclaim, the agents of the parties knew of and discussed the trans-

1. The applicable railway freight tariff was stipulated to and attached to the pretrial order. Storage in transit is included in the privilege provisions of this particular tariff. It is also noted that the bills of lading which are attached to the pretrial order are marked "Register for storage in transit."

it privilege provisions of the applicable railway tariff and the liklihood of storage occurring, the insertion in the contract of the express provision that the policy does not cover "if such property is in storage" is a clear indication that the parties intended to exclude the application of such usage from their contract. Under such circumstances the law is settled that evidence of trade usage is not admissible. The California Supreme Court in Ermolieff v. R. K. O. Radio Pictures, Inc., supra, citing New York Central R. Co. v. Frank H. Buck Co., 2 Cal.2d 384, 41 P.2d 547, states the rule: "* * * where the terms of the contract are expressly and directly contrary to the precise subject matter embraced in the custom or usage, parol evidence of that custom or usage is not admissible." [19 Cal.2d 153, 122 P.2d 6] Also see Fish v. Correll, 4 Cal.App. 521, 88 P. 489; Withers v. Moore, 140 Cal. 591, 74 P. 159; Wigmore on Evidence, 3rd Ed., Vol. IX, Sec. 2440, p. 127; Williston on Contracts, Sec. 656; Restatement, Contracts, Sec. 247, comment (d), p. 350. As stated by the United States Supreme Court, "This rule is based upon the theory that the parties, if aware of any usage or custom relating to the subject-matter of their negotiations, have so expressed their intention as to take the contract out of the operation of any rules established by mere usage or custom." Grace v. American Central Ins. Co., 109 U.S. 278, 283, 3 S.Ct. 207, 210, 27 L.Ed. 932.

■■ The language of the contract is unambiguous and is fairly susceptible of but one interpretation. It is denominated a transportation policy and the parties intended it to cover the goods while being transported, "but not if such property is in storage". At the time of their destruction and for approximately a year prior thereto, the goods were in storage and, therefore, not covered by the policy.

The findings of fact and conclusions of law appearing in this memorandum of decision shall serve as findings and conclusions pursuant to Rule 52(a) Fed. Rules Civ.Proc. 28 U.S.C.A. Counsel for plaintiff is requested to prepare, serve and lodge a formal judgment for settlement in accordance with local Rule 7.