## No. 17,760.

## F. Julian Maier *v.* United States Fidelity & Guaranty Company.
(298 P. [2d] 391)

Decided June 11, 1956.

Mr. EDWIN P. VAN CISE, for plaintiff in error.

Messrs. WAGNER & WYERS, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

PLAINTIFF in error, a physician and surgeon in the City and County of Denver, at all times herein mentioned was a member of the Colorado State Medical Society, which carried group insurance on its members with the United States Fidelity and Guaranty Company, defendant in error, which will be referred to as the insurer. He is suing to recover attorney's fees and costs expended in defense of a libel suit and contends that such items are covered in the insurance policy, and that insurer is liable therefore.

About June, 1946, plaintiff in error, who will be referred to as the insured, saw a patient who had formerly been a patient in Spears Sanitarium and from which she was taken to another hospital where the insured saw her, and where she died about four days after insured's attendance upon her. The insured was required to fill out the certificate of death, and after supplying all of the necessary medical information on this, added on the margin the following statement: "This patient died from criminal neglect at Spears Sanitarium."

In June of 1950 suit against the insured was instituted by Spears Sanitarium, based upon two claims, one of which referred to the above marginal statement written

by the insured; and the second on a publication in the Rocky Mountain News appearing December 3, 1949, about three years after the death certificate was signed. This second claim was set out as follows:

"That on to-wit Saturday, December 3, 1949, the defendant did * * * cause to be published in the Rocky Mountain News * * * a photostatic copy of said death certificate, including the said words, which does appear in the said newspaper for the said date, on page 5 thereof."

Further basis for the claim was alleged as follows:

"That the said defendant did * * * further state that the said Susia A. Bower died after having 'laid several days no care' at Spears Sanitarium, and did cause the said statement to be published, on the date aforesaid, in the Rocky Mountain News."

It is thus to be seen that the libel suit was based on two publications growing out of the original transaction, namely, one claim on the statement made in the death certificate, the other the publication of additional remarks by the insured concerning the matter.

This litigation terminated favorably to the insured and he now seeks to recover for expenses voluntarily paid without consent of the insurer.

The judgment of the trial court was adverse to him and he seeks review of a judgment of dismissal by writ of error.

A rider endorsement attached to the policy provides:

"* * * pay any damages against Assured named herein, for professional services rendered, or which should have been rendered by him, * * * and resulting from any claim or suit based upon malpractice, error, negligence, or mistake, * * * slander, *libel,* * * * or arising from any counter-claims in suits brought by the Assured for the collection of fees provided such damages are claimed under any of the foregoing."

Realizing certain phases of its liability the insurer offered to provide the insured with defense as to

the marginal notation on the death certificate which forms the basis of the first cause of action in the so-called "Spears" case. The insurer paid a portion of the expenses that had been created because the insurer states that such expense would have been necessary regardless of the allegations contained in the first cause of action. The offer to provide counsel for the defense of the first cause of action was refused by the insured and his attorney. The amount of the attorney's fee paid by the insured for his personal counsel, and now forming the gist of this action, was agreed upon between insured and his private counsel without the insurer being a party to the agreement. This was a direct violation of one of the representations made by insured appearing on the reverse side of the policy, namely: "I agree not to contract any expense in a claim or suit under this policy without the written authorization of the company and will attend and assist in the defense without charge to the company."

It is plain that the second cause of action which concerns the publication herein quoted is not covered by the insured's policy, since by the terms thereof the insurer is required to defend only such allegations of a suit as arise out of services rendered or that should have been rendered within the coverage of the policy; further, the insurer cannot be liable for expenses voluntarily assumed by the insured, who is in no position to insist upon performance by the insurer since the facts disclose that such performance was prevented by the insured.

It is crystal clear that the second cause of action in the Spears' case has nothing whatever to do with professional services rendered or that should have been rendered, this being the real purpose of the coverage provided. These insurance contracts should be construed with a view of protection to both the insured and the insurer, and the rights of each should be respected.

When the insurer offered to defend the first

cause of action and was refused, and the insured insisted that the defense should be conducted by an attorney of his choosing, such choice on the part of the insured was one that he had no right to make under the terms of the policy. There is little doubt, if any, that there was liability on the part of the insurer to defend that part of the "Spears" suit based upon the marginal notation on the death certificate, but no liability as to the other. Therefore neither party had the right to exclude, nor to interfere with, the other from participating in a defense. While it is true that the marginal notation on the death certificate was not a pure compliance with any requirement of the law or the death certificate itself, it may be considered as an allowable elaboration of the insured's full diagnosis of the causes of death.

In sum, we conclude that the phrase in the policy, "to pay any damages against Assured named herein for professional services rendered, or which should have been rendered" controls the second cause of action, because the discussion of the patient's treatment at a sanitarium and the publication thereof, certainly does not fall in the category of rendering any professional service. In the last analysis, the record here seems to present a situation where it is not the insurance company's refusal to discharge its full obligation, but rather the insured's refusal of a tender of performance by the insurer in accordance with the terms of its policy.

The judgment of the trial court granting the insurer's motion to dismiss was right and should be, and is, hereby affirmed.

MR. JUSTICE SPARKS did not participate in the consideration of this case.